Here ye, here ye, Ms. Honorable Appellate Fork for the 2nd Judicial District is now open. The Honorable Susan F. Hutchinson presiding. Please be seated. Your Honors, the only case on the docket this morning is 2-25-0024 Solid Waste Agency of Lake County and County of Lake Illinois. Thank you Ms. Appellate. The Zion Landfill, Inc. Defendant Appellate. Are you in the room on the count of three counts? Mr. Dirk J. Price. Are you in the room on the count of three? Mr. Phillip L. Miller. Good morning everyone. We have Justice Burkett with us on screen. So make sure you keep every once in a while look at him so he doesn't feel left out. And whenever you're ready Mr. Price you may begin. Thank you. Good morning again. I'm Dirk Price from Anselm, Inc. On behalf of the Solid Waste Agency of Lake County with me is Mary Jane Dorland. She also worked with us on the brief. Kim Fox, the Assistant State's Attorney for the county who is going to be here today sends her regrets. She has a family medical issue. With that, may it please the Court. Before the Court in this case are issues of statutory interpretation of particular sections of the Illinois Environmental Protection Act. That's all. Nothing more and nothing less. And it is the job of the Court to interpret the Act just as the Illinois Supreme Court did in Alternative Fuels, the case I'm sure we'll all be talking about a little bit, where they ruled the definition of waste is clear and unambiguous. And in this case, the plaintiffs have asserted that the defendant is misclassifying materials as non-waste, that is, they're not waste at all, so the section that requires the payment of a fee doesn't apply, or they mischaracterize them in a way to fit them within an exemption to the fee that's set forth in the statute. Are there any administrative guidelines or scientific guidelines that would identify this section? This particular product waste? Well, the definition given to us in the statute is what controls, and it's been interpreted by the Illinois Supreme Court in Alternative Fuels to say it's a discarded material, which unless it's returned to the economic mainstream, is a waste. And so our contention here is that these materials are never diverted from the waste stream to the economic mainstream. They end up at the end of the waste stream, pooled inside the cup that is a landfill. They reside there permanently and forever. And so to us, that is a discarded material that's a waste. In particular, what we're talking about here are ABCs, in the brief, alternate daily covers. These are the kinds of things that come in the landfill by reorganizing them on site within the footprint of the landfill. Wood chips, for example, which are good for tractors. By reorganizing how they move these wastes around, they have some operational benefit. At the end of the day, though, that does not mean they're not wastes, which is what they've always said. They've said we get some benefit out of it, therefore it has value to us. We're our own economic mainstream, and therefore these things are not waste. And our contention is that under the clear definition set forth in alternative fuels and in the Lincoln case, which was the ski hill case, where they brought all sorts of materials to the ski hill and left them there to build up a ski hill. And in this court's case, in Northern Illinois Services, these materials, ABCs and soils, ABCs and road base, the wood chips, are clearly still waste, and so they should have a fee paid on. They're not intended to be called non-waste simply because they're a benefit to the landfill. Moreover, under the statutory scheme, there is a provision in the act that says, well, if you want to get out of paying the fee for something you think is beneficial to you, go get a beneficial use determination. So that statute exists, and their point is, well, that only applies to wastes. Well, that's not true. The actual statement in the statute itself, 2254, is materials that are managed as waste are eligible for this beneficial use determination to get them out of having to pay the fee. There is no argument, no doubt, that the things we're talking about, ABC, wood chips, are, according to the permit issued to the landfill, managed as wastes. Their permit is unequivocal that these materials have to stay within the lined footprint of the landfill, where if water or any other liquid touches them, it creates what's defined in the statute as leachate. Leachate's only created when water touches waste, and because all of these are considered to create leachate, thus waste-producing water, they have to stay within the footprint of the landfill. They must be managed as waste. Well, if these wood chips are so beneficial, the State of Illinois said, you can come and apply to us for an exemption. We want to track it. We want to know about it. We want to know precisely what's going on with these managed materials. They've never done it. They've just simply... The statute, as you've identified it, says you can come to us. Does it say you shall come to us? Do they have to have that certification or that review? Only if they don't want to pay the fee. Okay. But nowhere does the statute say that nothing can be there except waste or something that qualifies for a beneficial use determination. The statute doesn't say that. Which part of the statute? I'm not sure. I'm sorry. I'm asking you. Like, where in the statute does it limit it? Justice Hutchinson just asked you, must they get a beneficial use determination? If it's not waste to begin with, their argument is they don't need to do that.  The 2254 says if it's a material, so they don't use the word waste, managed as waste. So let's take wood chips. Let's say that they stand against... I'm guessing, though, their argument is it's not managed as waste because we're using it for road, road base, and alternative daily cover. That would be contrary to the permit issued by the EPA. Their operating permit requires them to manage even the commodity of wood chips that they are allowed to use inside for road base and other things. Their permit says you will manage them as waste. But this is a question of statutory determination. So I don't know that we're limited or we take guidance by the permit, although we can if that makes sense. But it also leads me to another question, which is how do we get to the extrinsic evidence of the letters and other, you know, the non, and I realize you're not arguing this, but the non-prosecution, if the statute isn't ambiguous? And do you contend, as a secondary matter, that the statute's ambiguous? We do not. We don't think we need to get to the secondary materials. The way the statute is clear, what's happened here is this tug of war has existed over six governors, three from each party, and just as many directors of the IEPA. And so we don't believe that all this extrinsic evidence needs to come in, and that's our problem with the trial court's decision is they unduly deferred to IEPA and this extrinsic evidence. The statutory role is that of the courts. That's the court's job in this check and balance to check the regular, not only for the benefit of the industry, but for the benefit of the public. That check and balance is in the courts. The IEPA, as we know from alternative fuels, can be wrong, right, about their interpretation of the statute. That's what the old Supreme Court said, is the agency was wrong, and so things were given clarity. And in this case, the extrinsic evidence you're talking about is very inconsistent and even diametrically opposed. So if we ask about the extrinsic evidence. But we wouldn't get to it if it wasn't ambiguous. Agreed. We would not get to it if it isn't ambiguous, and we don't need to. May I also ask, you request summary judgment on the affirmative defenses? We do. Yes, because we didn't. Nothing SWALCO or the county did led them to change a position. They didn't rely on anything we've done. We didn't, like the cases they cite, we didn't calculate what the fee was. They were solely in control of that. So it's all we did was receive this and then figure out they're misclassifying waste, and it should have been more. Same for ranches. You know, that's an equitable principle, but the delay is based on trying to understand and divine from them the information they control and keep. So we're relying on them, and now for them to turn around and say, no, we relied on you. That's not how the statutory scheme is set up. That's not how they report, and that's not how they pay. So the misclassification is their issue. So how would I make that, how would we make that determination when you didn't ask for that in front of the trial court? On the equitable cases, if that, we go back to, well, on the affirmative defenses. You didn't ask for that relief in your motion. Well, the question is, we didn't ask for relief on the equitable. Well, yeah, as I read your motion, perhaps I read it wrong. You didn't ask for relief on the affirmative defenses. You didn't ask the trial court to give you summary judgment on the affirmative defenses. So how would we, as the appellate court, give you that relief? Well, they asked for it. I'm sure you're not going to try and tell me, well, if they asked for it, then we can ask for it, because they clearly asked for it, saying that would be an alternative grounds to affirm. Right. We believe that the affirmative defenses as a matter of law are. . . That's the kind of thing you say in a summary judgment, but you didn't say it to the trial court, did you? We did. We argued it in the pleadings, I believe. It's not in your motion. Well, I think we had. . . Other than that, it's fine. We had the three, right? We had cross motions for summary judgment. I believe we resisted it in their motion to say that they're not entitled to it. So that's the reversal. But I think Justice Mullen might be asking, just because they asked for it doesn't mean that it's yours to argue. Did you ever present your own pleading within your summary judgment on this issue?  Okay. The second set of misclassifications has to do with these things known as pollution control waste and non-special. And here, this is a perfect example of where the IEPA has been wildly inconsistent. The statute requiring the payment of these fees was in the late 80s, and until 2005, people paid. . . And we don't get this non-special certification until the late 90s in the statute. All throughout, the payment has been made on these soils that come to the thing, these non-special wastes, from the 90s when it's created up until 2005. There's no change in the statute, but in 2005, EPA says, oh, you know what? Non-special waste is exempt. You don't have to pay. So people have been paying. This is in the NEPFATAL letter. They have been paying. Now they stop paying. No change in the statute. That's why the extrinsic evidence is unreliable. That's why it's the job of the court to apply the statute to say what it says. Now, I literally. . . What statute or case says that pollution control waste that's certified as non-special is no longer exempt? There is not one. And we would concede that Paragraph 15 of our complaint, which asserts one of the ways we think they were misclassifying pollution control waste, is tautologically wrong. We thought it was a tautological definition based on how it had been applied, but it turns out that tautology does not stand scrutiny under 2248. So we agree, 15, as one of our examples of how the pollution control waste is misclassified, is wrong. The definitions. . . There is a way to have pollution control waste, as defined in the Act, certified as non-special. There is no way? No, there is. There is a way to certify something that meets the definition of pollution control waste as non-special. But that takes us back to the very first problem, which is the definition of pollution control waste in the Act. The exemption only applies to that. And pollution control waste requires that the waste be a threat to human health or the environment, or be handled, you know, a problem with handling. There isn't evidence to say they are entitled to that exemption. They substitute in it this thing called the maximum allowable concentrations formula, MAC list. But that can't be. . . But that can't be the standard because the standard varies, according to EPA, across the state of Illinois. So if a concentration of an element in soil is a threat to human health here, why is it not a threat in southern Illinois? You have less valuable people? That's not the purpose of the MAC list. The MAC list isn't a substitute for it. To the extent you want to look at extrinsic evidence, Clay said so in his letter. He was asked, is there a criteria the EPA uses for determining what's a pollution control waste? And he said, no, a statutory definition. It just seems to me that if it's pollution control waste, there's nothing in that nonspecial waste statute that. . . Nothing says that pollution control waste can't be nonspecial waste. Agreed. I agree with you. Well, we're wrong about that. Also, therefore, your argument that, well, if it's nonspecial waste, then they've got to prove it to your satisfaction or. . . That somehow, I guess, inferentially, it must undermine the definition of pollution control waste. That doesn't seem to make sense to me, at least from a statutory interpretation perspective. But I do want to say, from a policy perspective, maybe it does, but I don't think. . . You seem to think it's a good policy, so I'm going to defer to you on that, but I just don't see how this Court is going to get around the statutory scheme as it exists. We were wrong about that part. There can be nonspecial waste that is still pollution control waste, but labeling something nonspecial doesn't help you call it pollution control waste. That's our point. The statutory definition of pollution control waste, a different section of the statute, still has to be met, and that's not what's being met. They're not meeting that definition to impose that exemption. But it may be a different part of the statute, but isn't it all. . . We have to read the statute as a whole to make sense out of what the purpose of this statute is. Agreed. And that's why the definition of pollution control waste informs what they can exempt. And unless they can meet the definition, and special waste doesn't have to. . . The nonspecial thing doesn't tell you it meets the definition of pollution control waste. All it says is. . . It doesn't say it doesn't. The statute says if it's pollution control waste, it's exempt. Right. The purpose of the nonspecial certification is about paperwork. That's what it's about. 2248 is about you don't have to keep all this paper for nonspecial certified waste. It does not anywhere in 2248 say. . . And this also meets the definition of pollution control waste. It's a separate thing. We thought at one point that definitionally it meant that if you called it nonspecial, how can it be pollution control waste? That's not true under the statute to every definition. But the question remains for them to get the exemption, that load of dirt has got to meet the definition of pollution control waste, and there's no evidence that it does. The MAC list is not sufficient. Maybe it might be necessary, but it's not sufficient. Justice Burkett? Can you hear me? Yes, we can. All right. Thank you. I'm sure, Counsel, you've heard the phrase one man's trash is another man's treasure. My next door neighbors moved after 33 years, and they put a lot of material out, some of which was trash and some of which was valuable to other people. They took it. If material is put to good use, how can it possibly be waste? If it's segregated, in some instances purchased, how can it be classified as waste? So if the scavenger comes by and picks up the couch and the TV and other things that your neighbor put out and takes them and sells them at goodwill or the savers for the Red Cross, that's actually returning them to the economic mainstream, which is exactly what the Illinois Supreme Court said is not waste. It's diverted from the landfill. Our problem with what the waste we think is misclassified here is nothing is diverted. It all goes to the landfill and stays there. But what if they just keep it? And one other question, just briefly. Can you address the argument or the distinction that counsel makes, defendant makes for distinguishing the Lincolns? That it was a long-term versus immediate benefit? Well, there's no longer to view than their landfill. They also have a reclamation plan on file where it's going to be scenic overlooks or whatever. That's not the point of Lincoln. It was that it was not diverted. Lincoln picks up on the not diverted, whether that's in the short term or the long term. That's what Lincoln picks up on, and that's what I would say is the key to that case. And lastly, Judge, the second district in its Northern Illinois Services case cited to us says the fact that something has value doesn't mean it's not waste, doesn't mean it's not discarded, just because it has value to somebody. Justice, did you have something? No, thank you. I'll wait until we have it. Okay. Counsel, you'll have an opportunity to reply if you choose to do so. Thank you, Justice. Thank you. And is Mr. Cornell? May it please the Court. My name is Phil Cornell. First of all, thank you for this opportunity. My colleague, Ryan Rudich, is here as well. As indicated, we represent the defendant landfill, Zion Landfill, Inc. I'd like to get sort of right to the point here on a couple of things. First of all, we don't think there's any issue of material fact that Zion pays these fees in accordance with the Illinois EPA regulations, guidance, and the statute. The ordinance at issue here follows and derives from the statute. There is nothing anywhere in any statute that gives a county, of which there are 102 in this state, the authority to expand the definitions of waste or to redefine what a contaminated soil is or pollution control waste. There's just nothing that authorizes a county to go beyond what the statutory terms are. If there was, then we would have a hodgepodge of waste fee criteria throughout the state, contrary to the goal of the Illinois Environmental Protection Act, which is to have a uniform statewide program. If your client is going to have a question about something going on within the landfill, and this is strictly hypothetical, would you be calling the Lake County Authority or would you be calling the IEPA? There's a certain amount of enforcement authority that is delegated to the local government, for example, to do inspections, which are not at issue here. What's at issue is just this waste fee. And to be very clear, as the trial court pointed out, there's the maximum $3.27 per ton of solid waste disposed of. $2 goes to the state, $1.27 goes to the county. The plaintiffs want $1.27 for materials that the state does not want, the $2. That's really what's going on here. Now, the other problem is that this is a declaratory judgment. They're seeking declaratory relief, which, frankly, would have been more appropriate about 10, 15 years ago when this program became more solidified with the Illinois EPA. Now we are 10, 15 years later. The program has become established in the state of Illinois that landfills do not pay a fee on contaminated soil. This is statewide. If the state said, passed a rule saying landfills or generators of contaminated soil henceforth have to pay a fee because it's no longer exempt, we would pay the fee. The generators would have to pay the fee. What's really going on here? The landfills would impose the tax or the fee on their customers. It doesn't really matter that much to the extent that they want us to, you know, reimburse them for the past 15 years for fees not paid on contaminated soil or wood chips, which I will get to in a second. Now, as a matter of policy, we have to think about this. Why is pollution control waste exempt? Well, because you're removing contaminants from the environment. Why would you tax that activity? That's the policy reason. There is, in the record on that C721-77, there are a number of profile statements where the generator is the Illinois Department of Transportation for construction projects all across the state. Well, they're the generator of contaminated soil. So now I guess the plaintiffs want to tax the state of Illinois for that cleanup. It doesn't make any sense to tax a cleanup. That's the policy statement. If the policy was different, fine. We don't set policy. This is a heavily regulated industry. A landfill cannot do business in the state unless it strictly conforms to the law, including the waste fee. Okay, when the state deposits that, as you say, soil that is contaminated, who makes that decision? The party who brings it in, the state, or does the landfill make that decision? The landfills on material that upon which the fee is paid, which is essentially municipal solid waste and various other categories. The landfill pays the fee to the state. Okay. Okay. It's reported on what materials the fee is paid on and what materials it's not paid on. So, but when the state delivers the soil, do they come in with a statement, this is pollution controlled or this is waste, do they say anything? Yes, in the citations to records I gave you, Gary Deegan, who happens to be the employer of their expert witness, works for a consulting firm. The state generally will contract with an engineer or consulting firm to do the paperwork. So those forms say, it will say pollution control waste exempt from the fee. It's exactly on the form signed by Gary Deegan. And Deegan, or the consultant, is signed as agent for IDOT in that situation. So the state is claiming the exemption for their own material. And let's face it, there's a lot of issues here on contaminated soil, including the fact that the case they brought before the trial court, their complaint was based upon the special versus non-special waste, which, as indicated, they've now abandoned. They've essentially agreed that non-special pollution control waste is also pollution control waste, subject to the exemption, consistent with the 2005 Illinois EPA net total letter that went to the entire landfill industry. In addition, if you're looking to pay a fee to the state, a natural thing to do is look at the instruction for paying the fee. It's right on the instructions that contaminated soil from construction cleanups is exempt from the fee. So it's exempt from the fee. I think that their new position is not right. It's not appropriate for declaratory action. It wasn't presented to the trial court, and they've essentially waived it. New position being there's some standard out there that a landfill has to satisfy or a generator has to satisfy to qualify as a pollution control waste or some kind of concentration level or whatever. But they haven't articulated what that standard is, why it's appropriate. It's not right for declaratory action. It's a question of damages, assuming it was a standard. So I don't think that the contaminated soil issue is right. I think they've abandoned it. As I said earlier, it is on the instructions when Illinois EPA brought their enforcement action in 2019 against three different landfills across the country, I'm sorry, across the state, they didn't mention contaminated soil. If they had a problem with contaminated soil, that was the time to bring it. So I think contaminated soil is just not a good issue for them. The landfill properly pays it. Illinois EPA agrees. The plaintiffs have accepted the payments from this landfill for over a decade, which did not include a fee for contaminated soil. Let's move to Wichita for a second. Well, you said that there is certain enforcement action allowed by the IEPA to these local entities. So that's my next question. How often do they come out? How often does the local entity come out and inspect and compare report to what they see on site? It's several times a year. These reports are made quarterly. It's in the light of day. I was saying earlier about how this is a heavily regulated industry. It is hard to do anything in secret at a landfill. You are subject to inspections, announced, unannounced. There's reporting obligations if you screw up. The people running the modern landfills are highly cognizant of the need to do their work in the light of day. So there's nothing in the record indicating that Illinois EPA disagrees with anything about contaminated soil, since they're a main generator, or the state is. Wichita, this is the situation with Wichita. So what you're saying is they come out, not necessarily consistently with the quarterly report, but they come out and they check things, and they accept fees for that period of time, and all of a sudden, or maybe not to you all of a sudden, but it looks like you're saying all of a sudden something comes up, and this has come up, and now they're looking back at those reports and saying they didn't do the right thing? No, I'm saying that Illinois EPA has raised no question whatsoever about whether the landfill is properly paying fee on pollution control waste. It's never been issued. It's the plaintiffs here who disagree with the Illinois EPA's interpretation. The fact is, yes, they have an interpretation, but regardless of that interpretation, our duty is to comply with what the state of Illinois tells us to do, and the ordinance at issue in this case is derivative of the statute. And so just to wrap it up, your contention is that, one, the scheme as it sets up is that determination of whether it's pollution control waste and contaminated soils is made at the time it comes into the landfill. Yes, yes. And it seems like their argument is, oh, all right, but if somebody says it's non-special waste, then therefore the landfill has to come up with new evidence to show it's no longer pollution control waste, one. And the second is, you're saying it's not ripe. This argument, I'm sorry if you can't hear me, that this argument isn't ripe, is that because they can't point to any mode that wasn't pollution control waste, despite the fact that somebody certified it as not special? There's no violation they're pointing to. It's just that we're not comfortable with the determination, so go ahead and sort of prophylactically make them prove it better. Is that the ripeness issue, or have I messed that up? Let me try to clarify. First of all, the case began with the plaintiff's argument that if you're non-special waste, you're not pollution control waste. That was it. That was their argument. They abandoned that. They then started shifting their position. In the appellate brief, they argue that there has to be some kind of additional showing that the soil really posed a threat to the human health and environment. That's a new issue that was not raised below. And my point is that, first of all, leaving aside whether you properly raised it, what standard would you like us to apply? There is no standard that they've suggested. I think they say something like, you know, our position has evolved. That's not the word, but I think in their brief, their reply brief, they say the position's, they use a word similar to evolved. Yeah. They don't say shifted. It's something developed. I'm not sure. Yeah, they do say on page. But the bottom line, all right, but let's, I think I understand what you're saying on that point. The ripeness thing, I'm just curious to make sure I understood it. I think ripeness is close to being the right concept, but the point is that they haven't established the basis of what standard they're talking about. What standard do they mean when they say it doesn't pose a threat to the human health and environment? We believe that the state does use the max standard, which is a stringent concentration-based standard on when soil is contaminated or not. And just to quickly respond to an earlier point, the soil doesn't just show up at the landfill. The paperwork comes first, describing what the material is with test results on this max standard. And then there's an approval person. It's in our brief. It's in the materials. This waste approval person looks at the documentation to make sure it qualifies as a pollution control waste. Then it's approved. Then it comes in. And so it is true that that determination is based upon the paperwork provided, but there's a check going on on whether it satisfies the criteria. This is not just, you know, a fly-by-night operation where it shows up and you take it. On wood chips, very quickly, I don't have a lot to add except I agree with Justice Burkett. In fact, this is a situation where imagine there's a demolition job and there's wood in a dumpster. That wood could either go to a landfill as waste or it could be collected, separated, and processed and turned into something that could be reused. In this situation, it's being reused as road base instead of asphalt, instead of concrete, and it's being used as alternate daily cover instead of geotextile fabric, clean soil, or many other manufactured virgin products. This is classic recycling. Is it the most sophisticated? Are we making computer chips? No. But we are replacing a raw material or a virgin product with a processed material exactly the same as alternate fuels. In the Lincoln case, which stands as a contrast to alternate fuels in this case, it was the indiscriminate collection of wood and debris dumped into a landfill with no separation, no processing. It was indiscriminate. And instead of having a use for the material, they essentially said, well, someday we might build a ski hill. Now, imagine if that argument flew, then that would mean all landfills would be exempt. Because I'm just going to put my waste into this hill, and I'm going to build a ski hill. Therefore, I'm building a ski hill. If this doesn't fly, it's completely different from what's going on in our case and in alternate fuels, where it's the collection, separation, and processing. I think, happy to answer any questions. I was trying to be brief. If it's recycled, is it an exemption, or is it not discarded material? It's not discarded. It never enters the world of waste. It's sort of like my example would be very close to Justice Burkett. If you have an empty soda can and you have a trash bin and a recycling bin, if you put it into the trash bin, it's a waste because you've now discarded it. It's going to be discarded. If you put it into a recycling bin, it's going to be recycled. Going further, if someone comes along and takes that can out of the trash, and people do it, because to recycle it, you've now collected something from the waste drain to recycle it. The state law encourages recycling. That's why this is sort of contrary to state policy. It's number two in the waste management hierarchy in the Solid Waste Management Act. The state is supposed to be encouraging recycling, not taxing it. May I ask, what in the record establishes that this material is being processed to your specs and either paid for or the transportation for which is paid for? It is in our brief, and it is supported by the Jim Lewis affidavit, and we have another expert report from Craig Benson who talks about the care that's taken to ensure that the wood chips coming in are the right size, the right quality, to perform the function intended. This material is taken for free, or it's paid, or there's a payment for transportation. It's also in the record. To now tax this beneficial activity seems to be contrary to state policy. I have a lot more to say, but on both, I agree, Justice Mullen, that there's nothing in the statute connecting buds with the fee. It's not a prerequisite to recycle in the state of Illinois. If it was, everybody would be out of compliance. The wood chips come out of the material stream before it ever becomes a waste. It's lumber sitting in that bin. It's not a waste yet because someone hasn't decided what they're going to do with it. So, and plus, the Illinois EPA enforcement action was on that very topic. They backed off when they learned the facts, and it's allowed in the facility's permit to use wood chips as road base and as cover. One last question. Is there a presumption that applies here? For example, if it's a tax, then it's my understanding that it's construed strictly against the taxer. If it's an exemption, then it's my understanding it's construed against those claiming the exemption. Or does it matter here? I don't think the wood chips are not an exemption because it's not a solid waste permanently disposed of. And there is some attention given to sham recycling, which would be a different topic. A sham recycling example would be the Lincoln case. That was sham recycling. They weren't really using it to build a ski hill. Same thing with the other case, the Illinois case. For pollution control waste, it is, we're talking about, I think I would agree, we're talking about a well-established statewide program now. So, thank you. Thank you very much. Hold on. Yes, ma'am. Justice Brickett? Sorry. Just briefly, can you address the plaintiff's argument that we should consider, or we should not consider your affirmative defenses because they're meritless? We do not agree. The affirmative defenses are very strong, considering the time period that's passed between when they knew there was an issue, in 2009 or 2010, and the time they filed this lawsuit. They are valid, strong, and I think they're an independent basis for us to receive judgment in this case. Thank you. Thank you.  Mr. Price, if you wish to respond, you may do so. Thank you, Justice Hutchinson. Just a couple of quick points. One, on the hodgepodge, the patchwork cross, that's baked into the DNA of the Environmental Protection Act. If you look at 2215, which is what sets up this particular fee structure, it says that the function of whether the local government passes an ordinance to collect it or not. So the possibility that not all local governments will do so, that they have a landfill, exists in the statute itself. And that's because there are strings attached to what can be done with these monies collected. They have to go to this recycling initiative. So are you collecting for the IEPA, or for the state, as well as for your entity? No, we pass an ordinance to collect for us, and then we have to do these recycling programs as mandated by 2215. There are strings attached to this money. Some places won't choose to do that. They'll bake it into their contract. The Act permits them to have what's called a host agreement, and the Act says you can bake in cost and fees there. So it's already a hodgepodge of fee paying across the state. That's really a red herring. Let's talk about pollution control a second. With all due respect, Justice Mullen, you have it kind of backwards. The exemption is for pollution control waste. So truckload shows up of dirt at the gate, goes across the scale, and they say we're not paying a fee on that because it's pollution control waste. To be able to say that, that truckload has to meet the statutory definition of pollution control waste. We thought originally, and again, this is only paragraph 15 of our complaint. We didn't waive this. Paragraph 16 says you're also misclassifying pollution control waste different ways. And then we applied two different paragraphs in paragraph 24 of our complaint about pollution control waste unrelated to this nonspecial thing. We used to think that as soon as you labeled that pollution control waste, that truck, as soon as you labeled that truck coming in, that's nonspecial waste there. Because nonspecial is a certification that can apply to industrial waste or pollution control waste. That's what 2248 says. As soon as you label it nonspecial, we said automatically takes it out of pollution control, therefore no exemption, therefore a fee. We were wrong. It's not automatic. They are automatic the other way. To them, if we label it nonspecial, it's automatically pollution control and we're good. That's not true either. You have to meet the definition of pollution control waste in the act. That's the standard. They say we don't have a standard. Yeah, we do. It's the one the legislature passed. In the definition of pollution control waste, it's a threat to the human health or the environment. And we have said that the MAC list is not sufficient to control that definition. Nowhere does it say that the MAC list is that. Nowhere does it say, like I would reference judges, comparing the definition of hazardous waste. They're prohibited from taking hazardous waste. They have to make that determination when a truckload shows up. Is there hazardous waste here? In the definition of hazardous waste in the act, there are some particular standards referenced in the statute. There aren't for pollution control waste. Pollution control waste definition says threat to human health or the environment, and they're not making that determination. They're taking the nonspecial certification as a proxy for it, and that's not permitted by the act. That's why we say they've misclassified it. And until they can prove the exemption, they have to pay on it. But you're saying, and I know that you're just trying to expedite the process, but a truck shows up, they say this, and you're saying Zion just says, okay, fine, we're going to take it in. But according to counsel, they get information on these things maybe days, maybe months, maybe weeks ahead of time, and they know what's coming, and it's already classified. Well, they do. They get a sheet, and it has information that says it had the following contaminants in the soil, right? And they say that qualifies it to be nonspecial. That's great. Do those contaminants pose a threat to human health? That's a different question, and the answer can't be, oh, it violates the MAC list. Because then it's saying, oh, well, then it's a threat to human health in this county, but not in that one. Because the state of Illinois doesn't have one MAC list. It has multiple MAC lists. So the MAC list can't be alone what determines whether something's a threat to human health. And the reason that the MAC list varies is because it's not for that purpose. The MAC list isn't developed as a purpose to say what's a threat to human health. It's developed about road fill projects. How much can you backfill into a road project? As Mr. Kamala said, the biggest generator of this is IDOT. This is IEPA getting out of the way of IDOT because it doesn't want to make IDOT pay these fees for all their road projects. But that's not what the legislature said. The legislature says you have to pay. So is there a presumption that applies here? Yes, I agree. I mean, if you're billing the exemption, the burden of proof is on you to show that you fit the exemption. If it's not subject to the tax, then the presumption is not by virtue of an exemption, but by virtue of the fact that it doesn't fall within the tax class. That's my problem. It's my burden to say it's a waste, that it's coming as a waste. So when they talk about these wood chips, and they give the impression that they've gone down to Home Depot in order to lose off the shelf. That's not the case. These wood chips have nowhere else to go. And Jim Lewis said that he instead of... But they don't need to be processed to one inch to one to six inches and be of whatever other characteristics their specs require. Yeah, but do you know where their specs come from? Their specs come from their IEPA permit that says you can use these wastes in this way if they're like this. Those specs aren't industry specs. They're specs of the IEPA in their operating permit. That's the only reason they can do it. There's a statutory section we cited to you, 22-0, that says you can cover waste with waste because we're permitting it in the statute. That doesn't change the nature of it from being waste. Even though it's alternate daily cover, the statute allows you to cover waste with waste. That doesn't change the fact that it's not waste. It's still waste. And the IEPA permit says, because the statute says you can cover waste with waste. We're permitted by your permit. So we go to their permit, and it has all of those specifications you're talking about, Justice Mullen, about the size of the wood chips and the quality of them and what they can be. And nevertheless, IEPA in the permit says, and it better not come outside of the landfill footprint because when water touches it, it creates leachate, and that's waste. It has to be managed as a waste product. They can't get around that. These aren't wood chips that can go spread outside the footprint of the landfill. They have to go into the landfill. There's no place else for them to go. They're not diverted from the waste stream to the economic mainstream. The landfill is not its own economic mainstream. It's just the end of the waste stream. Pooling there. They're waste. Permanently disposed of. Forever. Fee due. Justice Burkett? Okay. Thank you. Thank you, gentlemen and ma'am, for your arguments this morning. We will take the matter under advisement, and we will issue a decision in due course. At this point, we stand adjourned. Thank you.